**In the Matter of Robert L. MARLOW and Sandra K. Marlow, Debtors.**

**No. 80 B 00083.**

United States Bankruptcy Court, N. D. Illinois, W. D.

March 27, 1980.

Herbert Greene, Rockford, Ill., for American Finance Corp.

Rolland McFarland, Rockford, Ill., for the Marlows.

## MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter comes before the Court on the Objection of American Finance Corporation of Illinois to Confirmation of a Chapter 13 Plan proposed by the Debtors, Robert L. Marlow and Sandra K. Marlow. Attorney Herbert Greene represents American. Attorney Rolland McFarland represents the Marlows.

The issues require interpretation of Sections 1325(a)4 and 1325(a)3 of the Bankruptcy Code.

### 1. Section 1325(a)4

■ Section 1325(a)4 provides that the Court shall confirm a plan if the value of property to be distributed under the plan on unsecured claims is not less than the amount that would be paid on such a claim if the estate of the debtor were liquidated under Chapter 7.

■ American's argument goes like this:

We have a potentially non-dischargeable debt if this were a Chapter 7 case. Therefore, we would eventually be able to collect our debt in full. Therefore, payment to us of 1% of our debt results in our receiving less under the Chapter 13 plan than under a Chapter 7 case. Therefore, the plan should not be confirmed.

A careful reading of the statute, however, fails to sustain the argument. The language of Section 1325(a)4 refers only to what a creditor would be paid on a claim if the estate is liquidated in Chapter 7. It looks only at the distributive provisions. The Court need not consider the possibility that American has a non-dischargeable debt.

### 2. Section 1325(a)3

Section 1325(a)3 provides that the Court shall confirm a plan if the plan has been proposed in good faith. The Marlows filed their Chapter 13 Plan on January 24, 1980. At that time American was a creditor with a secured claim, but the secured claim was avoided by the Marlows under Section 522(f)(2)(A). American became a creditor with an unsecured claim in the amount of $3,128.00. The Marlows propose to pay 1% on unsecured claims, or a total of $31.28 to American.

American had advanced fresh money to the Marlows in the sum of $1,454.54 on September 25, 1979. It is the contention of American that the fresh money was advanced in reliance on a false financial statement submitted by the Marlows, and that if the Marlows had filed under Chapter 7 the indebtedness to American would be held non-dischargeable in the amount of $1,454.54. Under Section 1328(a), however, a debt incurred in reliance on a false financial statement would be discharged in a Chapter 13 proceeding.

Working from this premise, American argues that the Marlows' plan is not filed in good faith because it is a Chapter 7 proceeding in disguise, designed to avoid the non-dischargeable remedies that would have been available to American under Section 523(a)(2).

It is an interesting proposition and probably one that the drafters of the Code did not consider. Certainly, the drafters did not contemplate that in each Chapter 13 case the Bankruptcy Court could be called upon to decide the dischargeability of a debt in order to determine if the plan was filed in good faith. If they had, they would have provided for doubling the staffs of Bankruptcy Courts.

What are the mechanics for deciding non-dischargeability in these circumstances? Would the decision be made after the filing of an Adversary Proceeding? Probably not, because the ultimate question is not whether the debt is non-dischargeable, but whether the plan is filed in good faith.

Would the decision be made as an element of the Objector's case in an Objection to Discharge? And if so, would Section 523(d) apply?

Regrettably, Section 1328(a) as enacted, is a potential device for abuse by dishonest debtors. It permits a debtor to obtain a discharge even as to non-dischargeable debts (except alimony, maintenance and support), though the debtor might pay only a nominal amount on these debts under the plan. The only barrier is the Court's application of the good faith requirement.

S.658 is a Bill designed to correct technical errors, clarify and make minor substantive changes in the Bankruptcy Code. The Senate Judiciary Committee report accompanying S.658 acknowledges this deficiency in the Bankruptcy Code and would exclude non-dischargeable debts from the scope of a Chapter 13 discharge. Thus a debtor would

benefit from Chapter 13 only if he could put together a plan that would pay non-dis-chargeable debts in full.

Meanwhile, under present law, the classi-fication of unsecured claims on the basis of whether they might or might not be dis-chargeable is probably improper and is cer-tainly subject to abuse. On the other hand, why should a debtor be required to pay a higher percentage to creditors who do not have a non-dischargeable debt, simply be-cause one creditor does have a non-dis-chargeable debt? That conceptual dilemma would, presumably, be avoided under S.658. But it would not avoid the unprecedented burden thereby imposed on bankruptcy courts to determine dischargeability in Chapter 13 cases.

\*     \*     \*     \*     \*     \*

I am aware of the views of two col-leagues. One of them believes that Con-gress did intend that the non-dischargeabili-ty of a debt should not be an element of good faith; and that an embezzler, a thief, or a person convicted of voluntary man-slaughter with a wrongful death judgment against him, may erase civil liability for such conduct by completion of a nominal Chapter 13 plan. Another colleague be-lieves that anything less than a 70% plan is not in good faith. Tempting as these inter-pretations may be in the search for consist-ently workable standards of good faith, I find it difficult to generate much enthusi-asm for either.

Of course, if Congress really did intend to give criminals and dishonest debtors a fresh start by filing under Chapter 13 rather than Chapter 7, Congress could have imposed its own minimum good faith test by permitting confirmation of a Chapter 13 plan only if it proposed to pay no less than, say, 50% on unsecured claims. In the absence of any such objective standard, each case will have to be analyzed on its overall merits. Need-less to say, there will be sharply contrasting approaches and results among some 200 Bankruptcy Judges in this country.

\*     \*     \*     \*     \*     \*

There is merit in the argument of Ameri-can that, as a general proposition, a Chap-ter 13 plan designed to avoid the non-dis-chargeable remedies available in Chapter 7 cases, and which provides for only nominal payments to unsecured creditors is not filed in good faith. The tough question is this: Must the Court, in order to decide the ques-tion of good faith, conduct a full trial on the merits of the allegations of non-dis-chargeability?

In this case the Marlows may have sub-mitted a false financial statement to Ameri-can. But we do not know what they were told by American, or if American had inde-pendent knowledge of additional debts, or if American reasonably relied on the financial statement. All of these questions (and oth-ers) might be raised in a non-dischargeabili-ty trial. The record of success by creditors in non-dischargeability cases, is, for one rea-son or another, very poor. A creditor's burden of proving all of the elements of a false financial statement case is great.

Is the mere threat or possibility of a non-dischargeable debt, without an actual trial and adjudication of non-dischargeabili-ty, sufficient, in conjunction with a nominal payment plan, to constitute a lack of good faith?

■■■■ Chapter 13 Plans in which the debtor offers a 1% payment on unsecured claims are suspect on their face, and Bank-ruptcy Courts should take a very strict view of them. In determining whether a debt-or's Chapter 13 Plan has been proposed in good faith it must necessarily be of para-mount importance whether the payments, periodic and total, represent the best effort which the debtor can apply against the scheduled indebtedness, particularly in cases, such as here, where the plan proposes to make payments for a significantly short-er period of time than the three years pro-vided by statute. The element of good faith requires the debtor, at the very least, to make meaningful payments to holders of unsecured claims. Otherwise, a Chapter 13 case may be construed as nothing more, in substance, than a Chapter 7 case, but with-out the disadvantages of certain provisions applicable to Chapter 7 cases.

■■■■ It is possible that a plan proposing a 1% payment to unsecured creditors could

be found to lack good faith even without the motive to avoid a Chapter 7 non-dischargeable debt. Here, the combination of a 1% plan plus the additional bona fide threat of a non-dischargeable debt is fatal. A formal adjudication on the merits of the alleged non-dischargeable debt is not required. The plan is not consistent with the spirit and purpose of Chapter 13, thus not in good faith.

### CONCLUSION

American's Objection to Confirmation under Section 1325(a)4 should be denied.

American's Objection to Confirmation under Section 1325(a)3 should be allowed.

The Debtors should be given 15 days to submit an amended plan.

An Order avoiding the lien of American under Section 522 (in a procedurally unrelated Adversary Proceeding) should not be entered pending further hearings on an amended plan to be submitted by the debtors.

An Order consistent with this Memorandum Opinion is filed herewith.