**In the Matter of Ricardo J. MURALLO, Debtor.**

**Bankruptcy No. 2–79–00868.**

United States Bankruptcy Court, D. Connecticut.

June 16, 1980.

Eugene C. Cushman, New London, Conn., for debtor.

Nancy M. O'Neil, Norwich, Conn., for creditor, Pequot Federal Credit Union.

## MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

On February 19, 1980, this court issued a Memorandum and Order denying confirmation of a plan for adjustment of debts under Chapter 13 of the Bankruptcy Code of 1978, proposed by the debtor, Ricardo J. Murallo (Murallo). Murallo's original plan called for eventual payment of four-tenths of one percent of his outstanding nonpriority indebtedness over a period of 36 months. Murallo, a schoolteacher, without dependents and earning $11,726.00 per annum, acknowledged that the sole reason for filing under Chapter 13 was to take advantage of the ability to discharge his educational loans. Such loans are normally not dischargeable under Chapter 7 proceedings. The court, in its rejection of the plan, held that it would not be confirmed "because it is not a meaningful plan for creditors, and it has not been proposed in good faith in view of the purpose of Chapter 13 of the Bankruptcy Code". *Murallo I* at 4.

Now Murallo returns to the court with an amended plan and again seeks confirmation. This amended plan calls for payment

of 10% of claims.[1] He alleges that the circumstances that would permit him to succeed with this new plan is a retrenchment in his personal living expenses. The objector to the original plan, Pequot Federal Credit Union (Pequot), reasserts its claim of lack of good faith against this new plan, and calls upon the court to reject it for the reasons discussed in the court's February 19, 1980 Memorandum. On this round, Pequot is joined in objection by the State of Connecticut Board of Trustees for the State Colleges, the obligee of the educational loan.

Murallo asserts that Congress made an educational loan dischargeable under Chapter 13, that he has the unchallengeable right to use Chapter 13 relief, and that the court should not imply a requirement that to demonstrate "good faith" within the meaning of 11 U.S.C., § 1325(a)(3), a debtor must pay a substantial percentage of the total indebtedness.[2] Murallo insists that the question of good faith is to be resolved solely by application of a "best effort" standard. Such a standard, Murallo says, is to be satisfied if the debtor's total take-home income is adequate to maintain the debtor at a minimal standard of living while paying to the trustee the sums required by the plan. In short, Murallo would have the court disregard entirely the fact that he seeks a Chapter 13 arrangement solely to avail himself of the advantageous discharge provisions, in reaching its determination as to his good faith.

The only difference between the rejected first plan and the second plan before the court lies in the proposed percentage of payment and the alleged concomitant reduction in the living standard of the debtor. The question to be resolved, then, is simply, does a proposed 10% payment satisfy the "good faith" requirements of a Chapter 13 plan where the admitted purpose is to take advantage of the dischargeability of an educational loan? While the court does not hold that a proposed payment of 10% to creditors can *never* justify the confirmation of a Chapter 13 plan,[3] I conclude that, upon the facts of the instant case, confirmation is not justified. Since this court's determination in *Murallo I*, a number of bankruptcy court decisions have been reported with respect to Chapter 13 confirmation issues. While these cases differ widely as to their fact patterns, a sort of consensus begins to emerge with respect to the issue upon which the instant case must turn. Bankruptcy courts have recognized that where a debtor chooses to file a Chapter 13 plan rather than a voluntary petition for Chapter 7 liquidation, an issue bearing upon the good faith of the debtor will be whether, as a major motive for that choice, the debtor seeks to avail himself of the advantageous discharge provisions of Chapter 13. *In re Iacovoni*, 2 B.R. 256 (Bkrtcy.D.Utah 1980); *In re Marlow*, 3 B.R. 305 (Bkrtcy.N.D.Ill. 1980); *In re Bloom*, 3 B.R. 467 (Bkrtcy.C.D. Cal.1980); *In re Cole*, 3 B.R. 346 (Bkrtcy.S. D.W.Va.1980); *In re Howard*, 3 B.R. 75 (Bkrtcy.S.D.Cal.1980); *In re Johnson*, 5 B.R. 40, 6 BCD 277 (Bkrtcy.S.D.Ohio 1980); *In re McMinn*, 4 B.R. 150, 6 BCD 297 (Bkrtcy.D.Kan.1980).

In *Iacovoni, supra*, the debtor was a part-time instructor at the University of Utah with a monthly income of $444.44. His outstanding indebtedness included $13,-000.00 in student loans. He proposed to pay nothing to any creditors under this contemplated plan. This plan, along with seven others also proposing no payments, were rejected as in bad faith. In its analysis of the good faith requirement, the court suggested that:

> [t]he following factors may be considered in determining whether a good faith effort to make meaningful payments to

---

1. The plan calls for a payment of $52 per month, a total of $1,872.00, for distribution to priority and unsecured creditors with claims of $18,440.00. The educational loans total $7,267.00. There is a comaker on a debt due Pequot of $5,425.00.

2. Section 1325(a)—The court shall confirm a plan if—(3) the plan has been proposed in good faith and not by any means forbidden by law.

3. See, for example, *In re Keckler*, 3 B.R. 155 (Bkrtcy.N.D.Ohio 1980).

holders of unsecured claims has been made:

. . . 4. The nature of the debts sought to be discharged; *specifically, to what extent the debtor is invoking the advantage of the broader Chapter 13 discharge which may carry with it concomitant obligations of repayment effort. Id.* at 267; *(emphasis supplied).*

In *Marlow, supra,* the court addressed an issue of dischargeability and found that

a plan proposing a 1% payment to unsecured creditors could be found to lack good faith even without the motive to avoid a Chapter 7 nondischargeable debt. Here, the combination of a 1% plan plus the additional bona fide threat of a nondischargeable debt is fatal. *Id.* at 308.

Another Chapter 13 plan was rejected in *Bloom, supra* because of the failure to propose "a reasonable and substantial payment to the creditors". The court reviewed the advantageous provisions of Chapter 13 and said:

It is obvious that debtors all over the country are seeking to use Chapter 13 as a way of avoiding . . . limitations upon a Chapter 7 discharge. In cases where the debtor would be denied his discharge for some wrongful conduct, or would be denied his discharge as a "repeater" debtor, or there is a substantial likelihood that one or more debts might be excepted from the discharge under Chapter 7, the debtors are now proposing to evade those limitations by making only an "illusory" payment to creditors. It is my opinion that a bankruptcy case does not become a Chapter 13 case merely by calling it a Chapter 13 case. If its real motive and purpose is to obtain a discharge of the debts without a reasonable and substantial payment to the creditors, and if the true purpose of attaching the label of "Chapter 13" to the case is to evade the discharge limitations in a Chapter 7 case, the court should recognize the

case for what it is, an illusion. I therefore find that the illusory Chapter 13 plan is not in good faith.

*Howard, supra,* involves a fact pattern not unlike the case before this court. In *Howard,* the debtors filed a Chapter 13 plan proposing a 1% payment on a total indebtedness to unsecured creditors of more than $35,000.00. When a confirmation was denied, the debtors returned with an 8% proposed payment. The court again denied confirmation, saying:

"Good faith" as that term is used in § 1325(a)(3), is not defined in the Code. The legislature left it to the courts to fashion the meaning of that term.

A review of the legislative history of Chapter 13 leads to the conclusion that the drafters did not intend the liberal provisions of Chapter 13 to be used as a disguised Chapter 7 Liquidation. The drafters intended debtors to deal fairly and justly with their creditors. As a reward for such dealing, debtors were given the "super" discharge provided for in § 1328(a) by which all debts, except alimony and child support obligations [§ 523(a)(5)] and certain long term debts [§ 1322(b)(5)], are discharged upon successful completion of the plan.

Congress could not have intended that a debtor, in effect going through a Liquidation proceeding, although calling it a Chapter 13 proceeding, should receive those benefits.

These debtors are not denied relief by the denial of confirmation. Chapter 7 relief is available to them. If they avail themselves of that chapter however, they may have discharged or dischargeability problems [§ 727 and 523(a)]. They can solve those by proposing a plan providing for substantial payments to their creditors. *Id.* at 76.[4]

In *Johnson, supra,* a 10% plan was rejected by the court without reference to any

---

**4.** At least one court has held that *any* proposed payment of less than 70% would not be "substantial" enough to satisfy an implied require-

ment of § 1325(a). *In re Burrell,* 2 B.R. 650 (Bkrtcy.N.D.Cal.1980).

dischargeability issue, but accompanied by the following dictum:

> We will observe that we expect that only seldom will we find that a proposed composition plan with so low a repayment to unsecured creditors as 10% is proposed in good faith. In our view a serious commitment to repayment of debts will have to be evidenced by a considerably higher percentage of payment.

In *Murallo I,* this court analyzed § 1325(a)(3) from a point of departure which was necessarily limited to legislative history. From that source of information I conclude that "Congress intended Chapter 13 not to be available for a proposal to pay only nominal amounts to creditors", and that a plan must be "meaningful" for creditors. I further concluded that Congress was "relying on the courts to protect the integrity of this portion of the Bankruptcy Code and not allow it to be improperly employed". Nothing has appeared in reported decisions subsequently to persuade me otherwise. My understanding of the requirements of the statute, now supplemented by the conclusions of other bankruptcy courts, as herein reviewed, leads me to hold that where a debtor seeks relief under Chapter 13 admittedly to take advantage of its discharge provisions, a proposed payment of 10% is not reasonably substantial or meaningful, regardless of a debtor's alleged lack of financial resources to propose a greater percentage of payment. Confirmation of Murallo's amended plan is denied, and it is

SO ORDERED.