**In the Matter of Thomas BROWN and Maureen Brown a/k/a Maureen Deralta, Debtors.**

**Bankruptcy No. 80 B 10334.**

United States Bankruptcy Court, S. D. New York.

Aug. 8, 1980.

Irving Picard, U. S. Trustee, New York City by Harold Jones, appearing on behalf of Bertram Berger, Chapter XIII Trustee, New York City.

Goldstein & Zucker, New York City by John J. Flynn II, New York City, for debtors.

## MEMORANDUM AND ORDER

JOHN J. GALGAY, Bankruptcy Judge.

■ In the present case, debtors Thomas and Maureen Brown have filed a petition under Chapter 13 of the new Bankruptcy Code, in which they propose a plan of "zero payments" to their creditors. Debtors list substantial and potentially enormous debts, but also list a combined monthly income that exceeds their monthly expenditures by over $140. The Court hereby denies confirmation of their "zero" plan as a violation of the "good faith" requirement of Chapter 13 and as inconsistent with the letter and spirit of the Code.

The petition in this case lists claims of over $112,000: five undisputed claims totalling $12,680, for hospital, day care and other services, one disputed claim for $100,-000 and seven disputed claims of "undetermined" amount, which derive from a serious multi–car collision in which debtors were involved in 1979. There is no evidence that debtors' conduct in the accident rose above the level of negligence to the level of "willful and malicious" conduct, but these claims have not yet been adjudicated. Nonetheless, one of the claims is a claim by the surviving spouse of a person killed in the collision, and thus total claims in the case could well exceed $1 million.

Debtors petition lists a combined monthly income of $1656 and estimated monthly expenditures of $1513. The monthly excess of $143, if accumulated over the next three years, would add up to no more than $5,000. Nonetheless, debtors are offering none of this money to their creditors, and are seeking confirmation of a "zero plan".

In practical effect, debtors are seeking to use Chapter 13 to achieve a Chapter 7–like liquidation. However, by choosing to file under Chapter 13, debtors avoid any possibility that debts involving "willful and malicious" conduct (that might have arisen in the car collision) could be held non–dischargeable from their account. Under Chapter 13, debts involving "willful and malicious" conduct are fully dischargeable, 11 U.S.C. § 1328(a), whereas under Chapter 7 those debts, as well as seven other categories of debt, are completely non–dischargeable. 11 U.S.C. § 523(a).

There is nothing in the legislative history of the Code to explain this disparity between the chapters.[1] However, its practical effect has been to give debtors an incentive to use Chapter 13 proceedings.[2] Theoretically, this "incentive" benefit can be justified on the ground that the Chapter 13 debtor is at least attempting to "make good" on his debts, whereas the Chapter 7 debtor (who does not get the benefit) is not. Yet, in the present case, as in an increasing number of cases, debtors seek to get the benefit of the Chapter 13 "incentive" without offering to pay one cent to their creditors. They do so even though they will have a monthly excess income of $140.00 out of which they realistically begin to re-

---

1. Between the introduction of H.R.6 in January 1977 and the introduction of the revised H.R. 8200 in July of the same year, the sole discharge exception, for alimony and child support, was simply "added" to the Bankruptcy reform legislation before the House. This was done despite repeated testimony at House Hearings that *all* the discharge exceptions enumerated in Chapter 7 should be explicitly excepted from Chapter 13. See *Bankruptcy Act Revision: Hearings on H.R.31 and 32*, Before Sub Comm. on Civ. and Const. Rights of the House Comm. on the Judiciary, 94th Cong. 1st Sess. 1430, 2128 (1975–76). The Senate version of the bill never contained the alimony exception but rather excepted debts arising from "willful and malicious conduct." This discrepancy between the bills was subsequent-

ly glossed over in a re–numbering of the Senate bill, and the House version was hastily enacted in the final days of the 95th Congress.

2. A recently proposed Code revision, S.658, 96th Cong., 1st Sess. (1979) § 191 9 Bankr. L.Ed. § 81:6,59, which was passed by the Senate in October 1979, would have eliminated the discharge discrepancy between Chapters 7 and 13. According to House Judiciary Committee Counsel, however, this change has been dropped from the House version of the bill, because the discrepancy provides a practical incentive to the use of Chapter 13 proceedings, which were very little used prior to the adoption of the new Code.

pay their creditors. This court refuses to confirm that course of action.[3]

There have already been numerous decisions in the area of "zero" or low payment plans and these decisions have employed several different approaches in denying confirmation.[4] In *In re McMinn*, 4 B.R. 150, 6 B.C.D. 297 (Bkrtcy.D.Kan.1980), Judge Pusateri relied upon Code Section 1325(a)(4), which requires that unsecured creditors under Chapter 13 receive "not less than" they would receive in a Chapter 7 liquidation. In that case, debtors had proposed a 1% plan that included certain debts which would be non–dischargeable under Chapter 7. Noting that the holders of these debts could conceivably collect 100% payment under Chapter 7, Judge Pusateri held that they were receiving "less" under a 1% Chapter 13 plan, and thus denied confirmation.

On the other hand, two courts have held oppositely, noting that Section 1325(a)(4) uses the words "payments on [the] claim," terminology which refers to distribution of property in the course of liquidation (Section 726), not to moneys which might possibly be collected by holders of non–dischargeable debts after discharge. *In re Jenkins*, 4 B.R. 278, 6 B.C.D. 378 (Bkrtcy.D.Colo.1980); *In re Marlow*, 3 B.R. 305, 6 B.C.D. 77 (Bkrtcy.N.D.Ill.1980). Moreover, in *In re Kriger*, 2 B.R. 19 (Bkrtcy.D.Or. 1979), claims arising out of a serious car collision were held to be the result of negligence, not "willful and malicious" conduct, despite evidence that debtor had violated a brake maintenance statute and possibly smoked marijuana on the day of the accident. The claims were held to be dischargeable, as might the accident claims in

the present case, were they to be fully adjudicated.

Several other decisions have denied confirmation of "zero" plans on the ground that such plans are inconsistent with the general terminology of Chapter 13. *In re Iacovoni*, 2 B.R. 256, 5 B.C.D. 127d (Bkrtcy. D.Utah 1980); *In re Burrell*, 2 B.R. 650, 5 B.C.D. 1321 (Bkrtcy.N.D.Cal.1980), *In re Seman*, 4 B.R. 568, Bankr.L.Rep. (CCH) ¶ 67,-455 (Bkrtcy.S.D.N.Y.1980). Numerous sections of Chapter 13 make reference to plan "payments". See, e. g., 11 U.S.C. §§ 1326–9. In the context of plans which propose no payments, those provisions lack meaning. That poses potential problems as, for example, with the discharge of debts under Section 1328(a): by its terms, Chapter 13 discharge is to occur only after completion by the debtor of all "payments" under the plan. To be sure, the whole purpose behind Chapter 13, is to enable the individual "to develop and perform a plan for the *repayment* of his debts." H.R.Rep.95–595 at 1182, U.S.Code Cong. & Admin.News 1978, p. 5787. (emphasis added). These cases all provide support for denial of confirmation here.

Of course, the vast majority of decisions that have denied confirmation of "zero" or low–payment plans have relied upon Section 1325(a)(3) which requires that debtors' plan(s) be submitted in "good faith". In most of these cases, findings of "bad faith" were based on the fact that debtors were seeking to get the bigger discharge and other incentive benefits of Chapter 13 without bearing any of the burden of repaying their debts. As the court has already noted, that is the very situation which exists in the present case. Even in the six cases

---

**3.** In accordance with Canon 3A(4) of the Code of Judicial Conduct for United States Judges, the Court hereby notifies the parties that it has consulted Professors Lawrence King and Verne Countryman concerning the pre– and post-enactment history of Chapter 13.

**4.** *In re Powell*, 2 B.R. 314, 5 B.C.D. 1233 (Bkrtcy.E.D.Va.1980); *In re Fonnest*, 5 B.C.D. 1236 (N.D.Cal.1980); *In re Iacovoni*, 2 B.R. 256, 5 B.C.D. 1270 (Bkrtcy.D.Utah 1980); *In re Beaver*, 2 B.R. 337, 5 B.C.D. 1285 (Bkrtcy.S.D.Cal. 1980); *In re Burrell*, 2 B.R. 650, 5 B.C.D. 1321

(Bkrtcy.N.D.Cal.1980); *In re Campbell*, 3 B.R. 57, 5 B.C.D. 1365 (Bkrtcy.S.D.Cal.1980); *In re Howard*, 3 B.R. 75, 5 B.C.D. 1375 (Bkrtcy.S.D. Cal.1980); *In re Anderson*, 3 B.R. 160, 6 B.C.D. 73 (Bkrtcy.S.D.Cal.1980); *In re Marlow*, 3 B.R. 305, 6 B.C.D. 77 (Bkrtcy.N.D.Ill.1980); *In re Lucas*, 3 B.R. 252, 6 B.C.D. 82 (Bkrtcy.S.D.Cal. 1980); *In re Bloom*, 3 B.R. 467, 6 B.C.D. 141 (Bkrtcy.C.D.Cal.1980); *In re Johnson*, 5 B.R. 40, 6 B.C.D. 277 (Bkrtcy.S.D.Ohio 1980); *In re Schongalla*, 4 B.R. 360, 6 B.C.D. 408 (Bkrtcy.D. Md.1980).

where zero or low payment plans, never was there a debtor with monthly income even approaching $140.00.[5]

Admittedly, the total amount of the Browns' debts is potentially enormous, and thus even the $5,000 they could contribute over the next three years might not add up to more than a few cents per dollar for each creditor. Indeed, were the total claims to be adjudged over $1 million, debtors' maximum possible contribution would be less than 1%. One court has termed one percent Chapter 13 plans "both insulting and de minimus." *In re Webb*, 3 B.R. 61, 5 B.C.D. 1379 (Bkrtcy.N.D.Cal.1980).

On the other hand, it should be noted that eligibility for Chapter 13 is supposed to be limited to debtors who have non–contingent, liquidated debts under $100,000. 11 U.S.C. § 109(e). This $100,000 limit functions to ensure that the excess monthly incomes of Chapter 13 debtors is not wildly out of proportion to the debts they seek to repay. In the present case, were the (car collision) claims already adjudicated and hence non–contingent, they would almost certainly push debtors beyond the $100,000 maximum limit. Alternatively, if debtors had proposed to make even some small payments under their plan, this court would be compelled to estimate the accident claims in order for the plan to be implemented. From the limited information presently before the court, it appears that such an estimate might well exceed the $100,000 limit set forth in Section 109(e).

This suggests that it is the magnitude of the collision claims which debtors included in their plan, that is the source of difficulty here. A Chapter 13 plan which proposed to pay off debtors' non–contingent debts of $12,680, out of their monthly $140 excess, could return about 43 cents on the dollar to each (non–contingent) creditor. Clearly,

such a plan would satisfy the "good faith" and terminological requirements of Chapter 13.

Under Section 1322(b)(1), debtors could deal with their contingent, "undetermined" car collision claims in a separate class. Creditors in that class would be allowed to pursue debtors' $10,000 automobile insurance policy, by obtaining relief from this court from Section 1301's automatic stay of collection activities.[6] The plan itself would not need to provide any payments to those creditors. Such an approach would keep debtor's plan squarely within the specifications of Chapter 13.

In conclusion, confirmation of debtors' present plan is denied, without prejudice to the submission of a new plan consistent with the guidelines heretofore outlined.

It is so ordered.

---

5. *In re Webb*, 3 B.R. 61, 5 B.C.D. 1379 (Bkrtcy. N.D.Cal.1980); *In re Stuart and Terry*, 3 B.R. 63, 5 B.C.D. 1397 (Bkrtcy.W.D.Ark.1980); *In re Keckler*, 3 B.R. 155, 6 B.C.D. 14 (Bkrtcy.N.D. Ohio 1980); *In re Cloutier*, 3 B.R. 584, 6 B.C.D. 196 (Bkrtcy.D.Colo.1980); *In re Harland*, 3 B.R. 597, 6 B.C.D. 235 (Bkrtcy.D.Neb.1980); *In re Jenkins*, 4 B.R. 478, 6 B.C.D. 378 (Bkrtcy.D. Colo.1980).

6. This court has already granted relief from Section 1301's automatic stay for one of the accident claimants, for the very purpose of allowing him to pursue debtor's insurance policy.