**In the Matter of Velma R. LAMBERT, Debtor.**

**Bankruptcy No. 880–06461–17.**

United States Bankruptcy Court, E. D. New York.

April 2, 1981.

Donner, Fagelson, Hariton & Berka by Frederick Fagelson, Bay Shore, N. Y., for debtor.

H. D. Schwartzman, Jamaica, N. Y., for objecting creditor.

## MEMORANDUM & ORDER

BORIS RADOYEVICH, Bankruptcy Judge.

St. John's University, the holder of a promissory note made by the debtor in ex-

change for a student loan, has moved the Court for an order denying confirmation of this debtor's chapter 13 plan and dismissing her petition or, in the alternative, converting her case to chapter 7. The University's objections, which are grounded on the debtor's alleged lack of good faith in filing a chapter 13 petition, were heard on December 30, 1980 in conjunction with a hearing to consider confirmation of the debtor's plan. For reasons which follow, the Court holds that the University's motion should be denied.

## MEMORANDUM

On October 22, 1980, the debtor filed a petition under chapter 13 of the Bankruptcy Code. In the statement accompanying her petition, the debtor lists a mortgage debt of $22,906.00 as secured by her $30,000.00 home, and unsecured debts of $5,001.31 (it later appeared that the debtor's unsecured debt amounted to $4,985.81). Included among the unsecured debts, upon which the debtor is in default, are the student loan and a loan from a finance company. The debtor's plan proposes to pay one hundred percent to the secured creditor and twenty-six percent to the unsecured creditors over a period of three years. In view of the debtor's tight budget, a greater pay back would not be feasible.

The University's proof of claim form, which is not disputed by the debtor, indicates that the University is the holder of a $3,000.00 "open end" promissory note made by the debtor in exchange for advances from the University under the National Direct Student Loan Program. The note, which bears interest at a rate of three percent per annum, became payable in quarterly installments on February 1, 1977, following the debtor's graduation from the University in May of 1975.[1] As of October 22, 1980, the University's claim totalled $3,218.37, including interest.[2] Thus, the University's claim amounts to twelve percent of the debtor's total debt, and sixty-five percent of her unsecured debt. The University asserts that the petition has not been proposed in good faith within the meaning of Section 1325(a)(3) of the Bankruptcy Code because the payment proposed for the educational lender is inadequate and because the debtor's primary motivation for filing a chapter 13 case was to circumvent the provisions of Code section 523(a)(8) which, admittedly, would have made the University's claim nondischargeable if this debtor had filed a chapter 7 case. The University further asserts that a strong Congressional policy against discharging educational loans substantiates the view that chapter 13 was not intended to be used to reduce and discharge educational loans.

Section 523(a) of the Bankruptcy Code provides (in pertinent part) that

[a] discharge under section ... 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(8) to a governmental unit, or a non-profit institution of higher education, for an educational loan, unless—

(A) such loan first became due before five years before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents. . . .

11 U.S.C. § 523(a). Code section 1328(a), however, provides that a chapter 13 discharge results in the

---

1. According to the promissory note executed by the debtor, the loan was to become payable in installments after nine months following graduation, i. e., February 1, 1976. Apparently, the debtor initially elected a repayment plan consisting of annual installments, the first of which was due at the end of the first one year period. Thus, the first installment did not become due until February 1, 1977. In the spring of 1976, the University eliminated the yearly installment option, which had been elected by the debtor, in order to conform its program to revised federal regulations for the National Direct Student Loan Program. As a result, the debtor was billed on a quarterly basis after February 1, 1977.

2. As a result of the University's conversion from an annual to a quarterly repayment plan, no interest was charged for the period of February through November of 1976.

discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

(1) provided for under section 1322(b)(5) of this title, or

(2) of the kind specified in section 523(a)(5) of this title

11 U.S.C. § 1328(a). The consensus among the courts which have passed upon this provision is that Congress intended to give a more generous discharge to chapter 13 debtors than to chapter 7 debtors. *See, e. g., In re Terry*, 630 F.2d 634, 6 B.C.D. 974 (8th Cir. 1980); *In re Fluharty*, 7 B.R. 677, 6 B.C.D. 1417 (Bkrtcy.N.D.Ohio 1980); *In re Walsey*, 7 B.R. 779, 6 B.C.D. 1410 (Bkrtcy.N.D.Ga.1980); *In re Marlow*, 3 B.R. 305, 6 B.C.D. 77 (Bkrtcy.N.D.Ill.1980). This is confirmed by the legislative history accompanying the section, *see* S.Rep.No.95–989, 95th Cong., 2d Sess. (1978) 142–43; H.R. Rep.No.95–595, 95th Cong., 1st Sess. (1977) 430, U.S.Code Cong. & Admin.News 1978, 5787, and by the opinions of commentators, *e. g.*, 5 COLLIER ON BANKRUPTCY ¶ 1328.01[1] (15th ed. 1979); Lee, *Chapter 13 Nee Chapter XIII*, 53 Am.Bankr.L.J. 303 (1979).

Notwithstanding this, some courts have seized upon the good faith provisions of chapter 13, *see* 11 U.S.C. section 1325(a)(3),[3] and refused to confirm chapter 13 plans which propose to discharge claims that would not be dischargeable in chapter 7 cases. For example, in *Matter of Marlow*, 3 B.R. 305, 6 B.C.D. 77 (Bkrtcy.N.D.Ill.1980), an unsecured creditor objected to confirmation of a one percent chapter 13 plan on the ground that the debtors' false financial statement on a loan application had induced the creditor to extend credit. Such an allegation would state a claim for relief under section 523(a)(2) of the Bankruptcy Code. Without hearing the merits of the creditor's claim, *cf.* Fed.R.Bankr.P. 701, 13–701 (an adversary proceeding is the proper procedure to determine the dischargeability of a debt), the court found that the creditor had a colorable claim under Code section 523(a)(2). Accordingly, it held that the debtor's plan was not filed in good faith because "the combination of a 1% plan plus the additional bona fide threat of a non-dischargeable debt is fatal." 3 B.R. 305, 6 B.C.D. at 79. Similarly, in *Matter of Tanke*, 4 B.R. 339, 6 B.C.D. 406 (Bkrtcy.D.Colo.1980), the debtors' fraudulent conduct in obtaining credit served as the basis for the court's refusal to confirm the debtor's one percent plan under Code section 1325(a)(3). A similar result has been reached in cases in which debtors have proposed one percent payment plans, *In re DeSimone*, 6 B.R. 89, 2 C.B.C.2d 1060 (Bkrtcy.S.D.N.Y.1980), or token payment plans, *In re Yee*, 7 B.R. 747, 3 C.B.C.2d 388 (Bkrtcy.E.D.N.Y.1980), as a means of discharging student loans which would be non-dischargeable under Code section 523(a)(8). In a majority of such cases, the finding that the debtor lacked good faith has been justified in part by the conclusion that a diminimus repayment plan is not consistent with the statutory scheme of chapter 13; the fact that the objecting creditor would have a remedy against a chapter 7 debtor under Code section 523(a) has not been sufficient, standing alone, to deny confirmation.

Most courts wisely have declined the invitation to draw a precise line in determining whether a chapter 13 plan has proposed the meaningful payments contemplated by the statutory scheme. *E. g., In re Stollenwerck*, 8 B.R. 297, 7 B.C.D. 199 (Dist.Ct.M.D.Ala.1981); *In re Burrell*, 2 B.R. 650, 5 B.C.D. 1321 (Bkrtcy.Dist.Ct.N.D.Cal.1980); *In re DeSimone*, 6 B.R. 89, 2 C.B.C.2d 1060 (Bkrtcy.S.D.N.Y.1980). Rather, the Code's good faith provisions have been viewed as a flexible standard by which the court is to determine whether the debtor's choice to proceed with a chapter 13 case is "an abuse of the provisions, purpose or spirit" of chapter 13. *In re Yee*, 7 B.R. 747, 3 C.B.C.2d 388, 398 (Bkrtcy.E.D.N.Y.1980). For example, in *Matter of DeSimone*, 6 B.R. 89, 2 C.B.C.2d 1060 (S.D.N.Y.1980), the court took notice of legislative history accompanying

---

**3.** A condition precedent to the confirmation of a chapter 13 plan is that "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3).

chapter 13 in rejecting a diminimus repayment plan:

> The purpose of chapter 13 is to enable an individual under court supervision and protection, to develop and perform under a plan for repayment of his debts over an extended period.

6 B.R. 89, 2 C.B.C.2d at 1064, *quoting* H.R. Rep.No.95–595, 95th Cong., 1st Sess. (1977) 118, U.S.Code Cong. & Admin.News 1978, 6079. This Court has noted in a somewhat different context that the purpose behind new chapter 13 is to encourage the repayment of debts through future earnings, as an alternative to the liquidation of assets and the payment of a dividend. *In re Ciotta*, 4 B.R. 253, 2 C.B.C.2d 132 (Bkrtcy.E.D. N.Y.1980). It is not inappropriate to repeat the language of the House Report:

> The premises of the bill with respect to consumer bankruptcy are that use of the bankruptcy law should be a last resort; that if it is used, debtors should attempt repayment under chapter 13, Adjustments of Debts of an Individual with Regular Income, and finally, whether the debtor uses chapter 7, Liquidation, or chapter 13, . . . bankruptcy relief should be effective, and should provide the debtor with a fresh start.

*Id.* 4 B.R. 253, 2 C.B.C.2d at 134, *quoting* H.R.Rep.No.95–595, 95th Cong., 1st Sess. (1977) 117–18, U.S.Code Cong. & Admin. News 1978, 6078. Thus, the courts have developed a "meaningful plan for repayment" standard as one test of a debtor's good faith.

■ There is no need to engage in an extended quantitative analysis in order to determine whether this debtor's petition was filed in good faith. The plan before the Court proposes to repay twenty-six percent of the unsecured creditors' claims over a three year period. The debtor's budget, which has been reviewed by this Court with the assistance of the trustee, indicates that this is the debtor's best effort. While "best effort" is not a prerequisite to confirmation of this debtor's plan, it is an indication that the debtor's plan is consistent with the Congressional policy of encouraging repayment of debt through future earnings. Surely, this is a meaningful plan for repayment of debt.

■ A few courts have refused to confirm chapter 13 plans solely because they propose to discharge obligations which would not be dischargeable in chapter 7 cases. *See, e. g., In re Murallo*, 4 B.R. 666, 6 B.C.D. 478 (Bkrtcy.D.Conn.1980); *In re Marlow*, 3 B.R. 305, 6 B.C.D. 77, 79 (Bkrtcy. N.D.Ill.1980). This Court declines to follow their lead. Such holdings render the express language of Code section 1328 a nullity, and deprive honest debtors of the advantages which Congress intended to make available to those who seek to repay their debts through future earnings. It has long been the rule that the right to a discharge is statutory and should be liberally construed so as to give the honest but unfortunate debtor a fresh start in life. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). *See also In re Tabibian*, 289 F.2d 793, 795 (2d Cir. 1961). To be sure, a lack of good faith should not be inferred from an action of the debtor which is authorized by the plain meaning of the statute.[4] A number of courts have reached this conclusion. *E. g., In re Fluharty*, 7 B.R. 677, 6 B.C.D. 1417 (Bkrtcy.N.D.Ohio 1980); *In re Walsey*, 7 B.R. 779, 6 B.C.D. 1410 (Bkrtcy.N.D.Ga. 1980).

■ Finally, the Court finds that neither dismissal nor conversion to chapter 7 is in the best interests of creditors and the estate. *See* 11 U.S.C. § 1307(c). This case was filed as a "no asset" case, and there is

---

4. The Court notes that legislation has been proposed in Congress (but has not been adopted) which would make the nondischargeability provisions of section 523 directly applicable in chapter 13 cases: the fact that such legislation is viewed as necessary by some Members of Congress is indicative of the fact that these provisions currently are inapplicable in chapter 13. *See* S. 658, 96th Cong., 2d Sess. (1980); 125 Cong.Rec. 12,185 (daily ed. Sept. 7, 1979). The Court's private sentiments concerning this legislative proposal should not and do not have any effect on the determination of the issues in this case.

nothing before the Court to indicate that this situation has changed. Liquidation of this estate under chapter 7 would result in the discharge of the other unsecured creditor's claim without the payment of a dividend. Surely this creditor would be better off with twenty-six percent of its claim than with nothing. Dismissal of this debtor's case would add nothing to the assets available to satisfy the creditors' claims, *see* N.Y.Civ.Prac.Law and Rules §§ 5205–5206 (McKinney 1978 & Supp.1980), but would deprive this debtor of her ability to make a fresh start in life. Accordingly, the Court concludes that the creditor's motion should be denied.

It is SO ORDERED.