**In re Thomas Graham SANDERS, II, Debtor.**

**Bankruptcy No. 81–10342.**

United States Bankruptcy Court, D. Kansas.

April 8, 1983.

918

David C. Adams, and Martin E. Updegraff, Wichita, Kan., for United American Bank and John Greenstreet, respectively.

Donald B. Clark, Wichita, Kan., for debtor.

## MEMORANDUM AND ORDER DENYING CONFIRMATION OF DEBTOR'S AMENDED PLAN

ROBERT B. MORTON, Bankruptcy Judge.

### FACTS AND NATURE OF THE CASE

Debtor filed a voluntary Chapter 13 petition on March 16, 1982. Both the original and amended plans purpose that secured debts be paid outside these proceedings. The original proposal was that four unsecured debts totaling $73,350.62 would receive ten per cent of their claims over a five-year period. Two of those unsecured obligations represent $70,690.62, or 96.37 per cent, of the total. Those same two debts were scheduled in a prior Chapter VII proceeding in which the debtor was denied a discharge under section 14c.(7) of the Bankruptcy Act. That denial of discharge was due to debtor's failure to satisfactorily explain the loss of 300 shares of stock in Sanders, Inc. Additionally, the court found that the transfer of stock was carried out in bad faith and with intent to defraud the creditors who object to confirmation in the instant proceeding. On appeal, that decision was affirmed January 4, 1979 by the district court; a further appeal to the circuit court was abandoned March 4, 1981 and the instant Chapter 13 case was commenced twelve days later.

Sanders is an architect and a partner in the firm of Hanney, Sanders and Associates. At the time of the filing, Sanders estimated his income at $800/month. This amount does not adequately take into account fluctuations in income due to the collection of architectural fees.[1] His wife's income of $1,300/month was considered in financing payments under the plan. The couple has two college-age daughters whom they are assisting in the payment of college expenses.[2]

Sanders also spends weekends and occasional evenings working for Sanders, Inc. at the Riverside Airport. He states no compensation is received from that source. His mother owns seventy per cent of the stock of the corporation and a friend, Paul Lewis, owns the remaining thirty per cent. While Sanders is not a shareholder, he attends shareholder and board meetings and has voted Mr. Lewis's proxy. Also Sanders has

---

1. At the time of the filing, Hanney, Sanders and Associates had a $1.6 million contract with St. Thomas Aquinas Church. The firm had contracted for a seven per cent fee from which certain costs would be deducted, however it represents a fairly sizeable influx into the partnership account.

2. Apparently at the time the objection to confirmation was heard, Sanders was assisting only one daughter with college expenses, thereby reducing his monthly expenses. *See* Sander's Deposition at 52.

personally guaranteed a number of debts owed by Sanders, Inc.

The creditors objecting to confirmation assert the proposed payments are inadequate in light of debtor's assets and financial condition and stress that confirmation would enable debtor to avoid liability on the great bulk of his indebtedness which has been adjudicated nondischargeable in the recent bankruptcy case above referred to. Objectants' end conclusion is that such is an abuse of Chapter 13 and violates the good faith requirements of 11 U.S.C. § 1325(a)(3).

On August 19, 1981, this court entered an order in this case holding that a grouping of dischargeable and nondischargeable debts in a single class did not conform to the requirements of sections 1322(a)(3) and 1122(a) which restrict membership in a particular class to claims that are substantially similar. Confirmation was denied with leave to file an amended plan.[3]

The amended plan, now before the court, was filed and provides for separate classes of unsecured claims: Class A—nondischargeable debts [$70,690.62]; and, Class B—dischargeable debts [$2,660.00]. Provision is made for pro rata payment of $7,070.00 on Class A claims [nondischargeable] "as funds become available"; Class B claims [dischargeable] are to share pro rata in $266.00, payable in two monthly installments of $88.66 and a third in the amount of $88.67. The amendment explicitly states that thereupon the balance of both Classes A and B claims are to be discharged.

The objections to confirmation of the amended plan reiterate the ground of debtor's lack of good faith in proposing the plan.

## MEMORANDUM

Since the enactment of Chapter 13 in 1978, the interpretation of the good faith requirement under 11 U.S.C. § 1325(a)(3) has generated more litigation than any other single aspect of Chapter 13. *See Cyr, The Chapter 13 "Good Faith" Tempest: An Analysis and Proposal for Change,* 55 Am. Bankr.L.J. 271 (1981). The applications of "good faith" have been as varied as the phrase is ambiguous. The courts have interpreted good faith to impose a substantial repayment requirement on the Chapter 13 debtor. *See, e.g., In re Hurd,* 6 B.C.D. 412, 4 B.R. 551 (Bkrtcy.W.D.Mich.1980); *In re Iacovoni,* 5 B.C.D. 1270, 2 B.R. 256 (Bkrtcy. D.Utah 1980). At the other extreme, courts have held that low percentage repayments have no bearing on the issue of good faith and that the only quantitative standard for payments is dictated by 11 U.S.C. § 1325(a)(4). *See, e.g., In re Sadler,* 3 B.R. 536 (Bkrtcy.E.D.Ark.1980); *In re Harland,* 6 B.C.D. 235, 3 B.R. 597 (Bkrtcy.D.Neb. 1980). The presence of debts which would be nondischargeable under Chapter 7 has been used as an indicia of bad faith by some courts. *See, e.g., In re Meltzer,* 11 B.R. 624 (Bkrtcy.E.D.N.Y.1981); *In re Murallo,* 6 B.C.D. 478, 4 B.R. 666 (Bkrtcy.D.Conn. 1980); *In re Marlow,* 6 B.C.D. 77, 3 B.R. 305 (Bkrtcy.N.D.Ill.1980). Other courts have stated that since section 1328(a) permits a broader discharge than is available under Chapter 7, debtor's good faith cannot be questioned for doing that which the statute permits him to do. *See, e.g., In re Koerperich,* 6 B.C.D. 970, 5 B.R. 752 (Bkrtcy.D.Neb. 1980); *In re Seely,* 6 B.C.D. 1003, 6 B.R. 309 (Bkrtcy.E.D.Va.1980).

\*       \*       \*       \*       \*       \*

This question has now been decided by five circuit courts of appeal[4] and at this point, the meaning of "good faith" has reached a stage of judicial evolution which, with some caution, may be viewed as presaging a more uniform future application of the test.

### Eighth Circuit

In *In re Terry,* 630 F.2d 634 (8th Cir. 1980), the Eighth Circuit Court of Appeals

---

**3.** *In re Sanders,* 13 B.R. 320 (Bkrtcy.D.Kan. 1981).

**4.** In addition to the five circuits referred to in the text, the Sixth Circuit has also briefly discussed the issue. *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427, 9 B.C.D. 1140 (6th Cir.1982).

found that a plan proposing no payments to any creditors was not proposed in good faith.

The Eighth Circuit had a second occasion to examine the question of good faith in *In re Estus*, 695 F.2d 311, 9 B.C.D. 1348 (8th Cir.1982). In that case, the plan proposed full payment to secure creditors and no payments to unsecured creditors. The lower court confirmed the plan because the unsecured creditors would have received nothing in a Chapter 7 liquidation. The district court affirmed. In reversing and remanding, the circuit court viewed the purpose of Chapter 13 as that of encouraging debtors to repay debts rather than extinguishing the obligations in a Chapter 7 case. Among the benefits designed to induce a debtor to elect the Chapter 13 route is the right to retain nonexempt assets and the expanded discharge of section 1328(a). Congress further encouraged the use of Chapter 13 by eliminating the requirement for unsecured creditors' approval and by expanding the class of individuals who are eligible for Chapter 13 relief.

The *Estus* court found that "good faith" did not impose a requirement of substantial repayment nor was the test synonymous with the minimum standards of 11 U.S.C. § 1325(a)(4). Those conclusions were qualified by the observation that a low percentage repayment should cause a court "to look askance at the plan" since *repayment* is a primary purpose of Chapter 13. *Id.* at 1351. As a general principle the bankruptcy court was directed, in considering good faith, to make a broad inquiry into all facts and circumstances of the case to determine "whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13." *Id.* Among the specific factors the appellate court considered as indicative of lack of good faith in *Estus* were (i) the zero percentage payout to the unsecured creditors; (ii) the limited time of repayment; (iii) the utilization of Chapter 13 to discharge a student loan; and (iv) the failure of the plan to take into account future increases in debtor's income. The order of reversal and remand directed a consideration of these and all circumstances surrounding proposal of the plan.

## Fourth Circuit

In *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir.1982), the lower court had denied confirmation of debtor's plan because it did not propose "substantial and meaningful" repayments to the debtor's unsecured creditors. Again, the circuit court rejected a general *per se* requirement of 'substantial' repayment but at the same time avoided any blanket endorsement of minimal payment plans. Much in the same vein as *Estus* the court noted that one important purpose of Chapter 13 was to encourage *repayment* to unsecured creditors. "Failure to provide substantial repayment is certainly evidence that a debtor is attempting to manipulate the statute rather than attempting honestly to repay his debts." *Id.* at 972.

The court in *Deans* adopted a case-by-case inquiry into whether there had been an abuse of the provisions, purpose or spirit of Chapter 13. The denial of confirmation was vacated and the case remanded for a good faith determination based on such standard. Among the particular factors the Fourth Circuit instructed the lower court to consider were:

> the percentage of proposed repayment, ... the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor.

*Id.*

## D.C. Circuit

The court's decision in *Barnes v. Whelan*, 689 F.2d 193 (D.C.Cir.1982), is rather limited in scope. The court declined to give a comprehensive definition of good faith and adhered to the traditional generalized interpretation that good faith means "honesty of intention." Appellate approval was given for a nominal repayment plan that was not

shown to have violated that general requirement.

## Ninth Circuit

The connection between substantial repayment and good faith was also explored in *In re Goeb,* 675 F.2d 1386 (9th Cir.1982). The lower court had held that the plan was proposed in bad faith because it lacked provision for substantial repayment of unsecured creditors. The Ninth Circuit held that section 1325(a)(3) did not impose a substantial repayment requirement.

The appellate court put it somewhat differently in stating its view that the proper inquiry was whether the debtors "acted equitably in proposing their Chapter 13 plan." *Id.* at 1390. Substantiality of repayment was only one of the factors to be considered. In arriving at its interpretation of "good faith", the court noted the pre-1978 decisions defining good faith were not wholly analogous in ascertaining the meaning of the term under the new Bankruptcy Code. The principal basis for its conclusions was a Supreme Court case interpreting prior law, *United Mutual Insurance Co. v. City of Avon Park,* 311 U.S. 138, 61 S.Ct. 157, 85 L.Ed. 91 (1940), which emphasized that bankruptcy courts are basically courts of equity. In analyzing the circumstances of the particular case the court viewed debtors' intention to repay priority and secured creditors in full, which might not have occurred in Chapter 7, as indicative of good faith; also favorable to confirmation was the fact that unsecured nonpriority creditors would have received nothing under Chapter 7; and, that debtors would not have had any surplus after payments under the plan. The appellate court reversed and remanded for a determination consistent with the opinion.

## Seventh Circuit

The facts in *In re Rimgale,* 669 F.2d 426 (7th Cir.1982), bear the closest similarity to those of the instant proceeding. Under the plan, debtor proposed a low percentage repayment of unsecured debts the largest of which represented a tort judgment which would have been nondischargeable in a Chapter 7 proceeding. The bankruptcy court confirmed the plan and the judgment creditor appealed to the district court. The district court's reversal accepted judgment creditor's argument that the plan violated section 1325(a)(4) in that the nondischargeable debt under Chapter 7 had a greater value than the reduced amount payable under the proposed plan.[5] However, the Seventh Circuit Court of Appeals rejected this analysis of the "best interests" test, finding that "the amount that would be paid on such claim if the estate of the debtor were liquidated" should not include additional amounts that a creditor might be able to collect on a nondischargeable debt after liquidation. The circuit court then went on to hold that a determination of good faith must result from a broad-based inquiry into whether there has been an abuse of the provisions, purpose or spirit of Chapter 13. The court suggested that on remand the bankruptcy court might want to consider the timing of the filing, the proportion of unsecured debt represented by the tort judgment and the equities of classifying together consumer debt with debt arising out of intentionally tortious conduct.

\* \* \* \* \* \*

■ While perfect unanimity among the circuits cannot be expected, these five appellate decisions reviewed above do evince a common thread in the interpretation and application of the good faith requirements: The bankruptcy court should make a broad inquiry into the totality of the circumstances of each particular case. This court adopts the view that the issue to be resolved in making a good faith determination is whether there has been an abuse of the provisions, purpose or spirit of Chapter 13.

Thus this court eschews the rigidity of an oversimplified rule that would deny confirmation wherever debtor seeks discharge of nondischargeable debts or proposes a low percentage repayment. There may be

---

5. *See In re McMinn,* 6 B.C.D. 297, 4 B.R. 150 (Bkrtcy.D.Kan.1980) (Pusateri, J.) (on the value to be placed on a creditor's nondischargeable debt in this context).

times when either or both factors may be present and confirmation nonetheless may be justified.

For example, in *In re Syrus,* 12 B.R. 605 (Bkrtcy.D.Kan.1981) (Franklin, J.), a creditor objected to the confirmation of a plan proposing to pay seventy per cent of a debt that would have been nondischargeable under Chapter 7. After examining the debtor's income and expenses and proposed payments under the plan, the court found the plan to have been proposed in good faith.

The recent case of *In re Tauscher,* 26 B.R. 99, 3 BANKR.L.REP. (CCH) ¶ 69,013 (Bkrtcy.E.D.Wis.1982), presents an instructive contrast to the case at bar demonstrating the case-by-case uniqueness of the good faith determination. In *Tauscher,* the court confirmed a plan filed two years after the filing of a Chapter 7 petition. Only two debts were listed; each had been excepted from the Chapter 7 discharge and debtor proposed to pay only seven per cent of the total. In deciding that the plan had been proposed in good faith, the court considered that debtor had few if any possessions. He had nine children, one of whom had serious medical problems. The principal reason for debtor's loss of his farm in the Chapter 7 proceeding was an injury which had prevented him from working and which still caused him a great deal of pain. Debtor had take-home pay of $280/month although in addition he received a housing allowance, medical care and food stamps. The court noted that completion of payments under the plan would require "superhuman" effort from the debtor. In those circumstances, the nondischargeability of the debts, the previous bankruptcy filing and low percentage repayments were held not to establish a lack of the requisite good faith.

■ Under the broad and discrete analysis which appears proper this court determines the plan proposed here not to be in good faith. The filing of a previous Chapter 7 proceeding in which discharge was denied due to bad faith conduct of the debtor is one factor weighing against him. Also of adverse weight is the fact that over ninety per cent of the liabilities to be discharged under the plan represent nondischargeable debts from the previous bankruptcy. Moreover, debtor has proposed a relatively low percentage payment of ten per cent which, in light of his professional abilities, financial prospects and work in process casts doubt on his commitment to the "spirit" of Chapter 13. His plan does not provide any specific time limit for completion of payments of the ten per cent portion of nondischargeable Class A debts.[6] All secured debts are to be paid outside the Chapter 13. Finally, this proceeding was filed on the heels of his abandonment of the appeal from a denial of his discharge. Under all the circumstances and proper inferences therefrom this court is convinced that debtor's primary and overriding purpose is to manipulate Chapter 13 as a device to escape nearly all of his liability on more than $70,000 of nondischargeable debts that are tainted with his fraudulent conduct. Those motivations and intentions hardly comport with the true "spirit and purpose" of Chapter 13; they constitute a lack of the good faith required by 11 U.S.C. § 1325(a)(3). Accordingly, confirmation of the amended plan is to be denied.

### ORDER

Based upon the foregoing memorandum which constitutes findings of fact and conclusions of law as required by Bankruptcy Rule 752 and Rule 52(a) Federal Rules of Civil Procedure

IT IS ORDERED that debtor's proposed amended plan does not meet the requirements of 11 U.S.C. § 1325(a)(3) and for that reason confirmation thereof is denied.

---

**6.** There is a general provision in the plan that payments thereunder be accomplished over a period in excess of three years but not more than five years.