In re **Ronald Wayne SEELY, Jr., Frances Charmaine Cox, Debtors.**

**Rose Marie JOHNSON, Plaintiff,**

v.

**Ronald Wayne SEELY, Jr., Frances Charmaine Cox, Defendants.**

In re **Ashton Harris PULLY, Jr., Debtor.**

**VIRGINIA NATIONAL BANK and First and Merchants National Bank, Plaintiffs,**

v.

**Ashton Harris PULLY, Jr., Defendant.**

**Bankruptcy Nos. 80–02126, 79–01278.**

United States Bankruptcy Court, E. D. Virginia, Norfolk Division.

Oct. 3, 1980.

Richard W. Hudgins of Hudgins & Neal, Newport News, Va., for Seely–Cox, debtors.

H. Duncan Garnett, Jr., of Garnett & Garnett, Newport News, Va., for Johnson, plaintiff.

Jerrold G. Weinberg of Weinberg & Stein, Norfolk, Va., for Pully, debtor.

Stuart D. Glasser of Glasser & Glasser, Norfolk, Va., for Virginia National Bank, plaintiff.

Wilson L. Rivers of Wolcott, Spencer, Rivers, Wheary, Basnight & Kelly, Norfolk, Va., for First and Merchants Nat. Bank, plaintiff.

## DECLARATORY JUDGMENT

HAL J. BONNEY, Jr., Bankruptcy Judge.

Has the Congress by the Bankruptcy Reform Act of 1978 repealed the "honest debtor" doctrine in Chapter 13 cases?

■ Aye, it appears it has indeed so done—intentionally or unintentionally.

One of the primary purposes of bankruptcy has been [past tense] "to relieve the *honest debtor* from the weight of oppressive indebtedness." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934), emphasis added.

The above–captioned cases present unique situations which beg the issue as it pertains to dischargeability. The Seely–Cox case involves an alleged willful and malicious tort against one Johnson.[1] Indeed, the debtor stands convicted in State court of assault and battery. In a straight case under the provisions of Chapter 7 of the Code, a court might find such a debt for injuries nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(6). Johnson has objected to the confirmation of the Chapter 13 plan.

The Pully case began as a Chapter 7 proceeding, but when the trustee and two banks jointly brought dischargeability suits, the debtor exercised his "one absolute right to convert" his case to Chapter 13 to avoid the dischargeability problems. 11 U.S.C.

---

1. In both cases, Seely–Cox and Pully, there are no concessions on the part of the debtors that the debts at issue would be non–dischargeable in a Chapter 7 case. All allegations of wrongdoing are denied.

§ 706(a). Is this an act of bad faith or simply taking advantage of existing law? The banks have objected to the conformation of Pully's plan.

*In this neck of the woods the Court seeks solely to interpret the law and not to legislate. And it is the plain meaning of the law—unstrained—which we would follow.*

It is easy to say that Congress would never repeal the honest debtor doctrine, but it certainly possesses that power if it wishes so to do. It is as easy to say that the radical departure was unintentional or the folly of the *enfants terribles* involved in the drafting. Au contraire, it is just as easy to argue that the Congress knew right well what it was doing.

If the law is "wrong," it is the prerogative of Congress to change it and not we ourselves. We take a dim view of those tribunals which strain the law to reach a certain result or which would fashion their own personal values from the law.

Does it not go against the grain with us to think that an embezzler,[2] a fraud or a crook might find relief under Chapter 13? But it is not what goes against the grain that applies; it is what the law says.

What does the law say?

The Code is quite clear as to what debts are and are not discharged in a Chapter 13 case.

### § 1328. DISCHARGE

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

 (1) provided for under section 1322(b)(5) of this title; or

 (2) of the kind specified in section 523(a)(5) of this title.

There are two exceptions. Does anyone see three? Section 1322(b)(5) pertains solely to curing defaults where the last payment will occur after the date on which the final payment under the plan is due. This involves curing defaults on secured or unsecured claims—nothing more.

The other exception, section 523(a)(5), involves alimony, child support and the like—nothing more. Such debts are obviously not dischargeable as a matter of public policy.

One must therefore conclude that every other debt—every other—is dischargeable.

Why did Congress do this? Why are all debts save two kinds dischargeable in a Chapter 13 case? Although there usually is a reason behind every law, there doesn't have to be. Too frequently in examining reasoning we read into law what is not there. The reason will be here revealed, but none of it changes the fact that there are but two exceptions to discharge.

The Congress wanted to encourage Chapter 13s as an alternative to straight bankruptcy. Except in a very few sections of the country, Chapter 13s [formerly Chapter XIII] have never done very well. What the Congress has done is commendable in principle, for he with his Chapter 13 payments feeds three: himself, his hungering creditor and some others. The debtor benefits from the protection, discipline and psychology of going this route and the creditors receive that which they would not ordinarily receive in a liquidation.

It works; indeed, it works. What is sauce for Alabama is sauce for the nation.

See House Report No. 95–595, 95th Cong., 1st Sess. (1977) 430–31, U.S.Code Cong. & Admin.News 1978, p. 5787; and Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc.No. 93–137, 93d Cong. 1st Sess., (1973) 157–67.

It follows that to encourage this yellow brick road Congress would provide incentives. For instance, there is protection for codebtors, creditors' acceptance of the plan is no longer required, upon certain terms and with adequate protection a debtor may cram his plan down the creditor's throat,

---

2. *In re Keckler*, 3 B.R. 155, 6 BCD 14 (Bkrtcy. N.D.Ohio 1980).

and "come all ye who are burdened with dischargeability problems." Congress sweetened the pot. Some believe the pot to be saccharine [nauseatingly sweet].

All of this is not without a price. A debtor must make extended payments where in a no asset case under a Chapter 7 he would not. Significantly, the debtor does not receive his discharge unless he completes all payments under the plan.[3] 11 U.S.C. § 1328(a). Further, he may not be granted another discharge within six years unless payments under the plan totaled at least 100% of the allowed unsecured claims; or 70% of such claims and the plan was proposed in good faith and was the debtor's best effort or there is approval by the Court of a written waiver of discharge. 11 U.S.C. § 727(a)(9).

Congress has spoken. There are but two categories of nondischargeable debts in Chapter 13 cases and none of the grounds alleged in the instant cases remotely touch upon them.

## GOOD FAITH

All of the above notwithstanding, the dischargeability issue in Chapter 13 arises again elsewhere in the Code. Among the criteria for the confirmation of a debtor's plan is the requirement that "the plan has been proposed in *good faith*." 11 U.S.C. § 1325(a)(3). The objectors here say that the attempts to avoid the considerable dischargeability problems of Seely–Cox and Pully are not good faith actions.

What is *good faith*?

It is nowhere defined. It is a subjective thing.

Since the term was used in the Bankruptcy Act, we first turn there, but, alas, we must labour under the knowledge that the Act stands repealed.

Although not specifically defined in the Act, a judicial determination of good faith was a prerequisite to confirmation of plans of reorganization under Chapters X [section 221(3)], XI [section 366(4)], XII [section 472(4)] and XIII [section 651]. The term is broad, indefinite and of necessity tied to the facts of a specific case. Section 146 of the Act established a nonexclusive test to determine lack of good faith, "... a petition shall be deemed not to be filed in good faith if ...," but provided nothing in the way of specific criteria to aid in an affirmative determination of good faith.

Generally, the Courts were concerned that the debtor use the various chapters for the purposes for which they were drafted and not to delay, hinder or defraud creditors. In a Chapter X case, *Matter of Loeb Apartments*, 89 F.2d 461 (7th Cir. 1937), the Court stated, when it appears that a petition has been filed solely as a part of a scheme to perpetuate some fraud or evasion rather than to reorganize, good faith is lacking. "But if it is apparent that the purpose is not to delay or defeat creditors but rather to put an end to long delays, expenses of administration, statutory periods of redemption, [etc.], ... good faith cannot be denied. ..."

As a practical matter, good faith depends on the facts and circumstances presented in each case, but it implies at least an honesty of purpose, that is, an actual intent to use the statutory process to effect a plane of reorganization. *In re Metropolitan Realty Corp.*, 433 F.2d 676 (5th Cir. 1970), cert. den. 401 U.S. 1008, 91 S.Ct. 1251, 28 L.Ed.2d 544. See 6 Collier on Bankruptcy (14th Edition) 6.07[2].

Pursuant to section 146, courts paid special attention to several factors in the Chapter X proceeding. The status of petitioning creditors was important; only those who were bona fide creditors of the debtor were entitled to file a petition. "In any proceeding of an equitable nature where good faith is required, parties may not purchase themselves into court." *In the Matter of Hudson Coal Co.*, 22 F.Supp. 768 (M.D.Pa.1938), the creditor's petition was dismissed when it was shown that the petitioner had purchased some of the debtor's bonds for the purpose of instituting a reorganization case.

---

**3.** He may be granted a discharge by the Court if the failure to complete such payments is "due to circumstances for which the debtor should not justly be held accountable."

In *In re Village Men's Shops, Inc.*, 186 F.Supp. 125, 129 (S.D.Ind.1960), a Chapter XI case, the District Court stated, "[I]n determining whether the proposal of a plan of arrangement under Chapter XI and its acceptances are in 'good faith' the specific inquiry should be whether, under the circumstances of the case, there has been an abuse of the provisions, purpose or spirit of the chapter in the proposal or acceptance."

Consequently, it appears the Courts are concerned with maintaining the integrity of the system vis–a–vis the unscrupulous debtor. So long as the petition is filed with the intent to utilize the Act to obtain relief in a legitimate fashion, good faith will exist. It is lacking when a debtor attempts to manipulate the statutory scheme for his own benefit at the expense of his creditors under the guise of a reorganization proceeding. See *Arey & Russell Lumber Co., Inc. v. American National Bank & Trust Co. of Danville, Virginia*, 201 F.2d 508 (4th Cir. 1953), where the Court held that a petition had been filed in order to delay the sole secured creditor of the debtor from exercising his rights.

The last word, generally, on the subject in this Circuit is *In re Northeast Corporation*, 519 F.2d 1360 (4th Cir. 1975),

"... the court's finding as to good faith or the lack thereof is a factual determination that cannot be set aside unless it is clearly erroneous." p. 1363

So much for the past history. We turn to the present, the use of the term *good faith* in the Code. The successor to Chapters X, XI and XII under the Act, Chapter 11, maintains the standard of a plan proposed in good faith. 11 U.S.C. § 1129(a)(3). Nor is the term used solely in Chapters 11 and 13. For instance, it is one of the criteria for approval by the Court of certain agreements with creditors. 11 U.S.C. § 524(c)(4)(B)(i). Further the precise term is used relative to a transferee or obligee. 11 U.S.C. § 548(c). Note particularly its use in a fundamental situation: Who may be a Chapter 9 debtor. 11 U.S.C. § 109(c)(5)(B).

There are other instances as well enabling one to justly conclude that *good faith* is as viable a concept under the Code as it was under the Act.

A Congressional intent under the Code on this matter does not exist. But this is neither a weakness nor a gap. For certain, justice would not be served by shrouding the principle in iron.

Indeed, this Court is of the opinion that there exists the *inherent right* of a court to require good faith or clean hands. The authority has been scant but respected. *Mecca Temple A.A.O.N.M.S. v. Darrock*, 142 F.2d 869 (2d Cir. 1944).

## CONCLUSION

All manner of debts but two are dischargeable in a Chapter 13 case. 11 U.S.C. § 1328(a).

Debtors with, shall we say, distinctive dischargeability problems could not under traditional bankruptcy statutory and case law application pass the good faith test. In that connotation it would be thoroughly repugnant to bankruptcy principles to confirm such cases. However and all of this notwithstanding, the good faith principle or doctrine has been dramatically altered by the discharge provisions of Chapter 13. In simpler words, 11 U.S.C. § 1328(a) overrides 11 U.S.C. § 1325(a)(3). We must defer to the former.

It awaits another day in these cases, but let it be said that this judgment stands only for the proposition that it is not bad faith to utilize the liberal discharge provisions of Chapter 13. Other elements of good faith remain to be and will be considered. While good faith does not touch upon dischargeability, a great many other considerations do obtain. Here only a basic threshold issue has been resolved.

IT IS SO ORDERED.