**In the Matter of Jerry Anthony AKIN, Betty Jane Akin, Debtors.**

**Bankruptcy No. BK85–136.**

United States Bankruptcy Court,
D. Nebraska.

Oct. 15, 1985.

Mary T. Powers, Omaha, Neb., for debtors.

Jeffrey T. Sveen, Paul T. Barnett, Aberdeen, S.D., for Educational Assistance Corp.

## MEMORANDUM OPINION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

This matter was heard on September 4, 1985, before Timothy J. Mahoney, United States Bankruptcy Judge, upon the objection to confirmation of plan filed by Educational Assistance Corporation. Mary Powers of Omaha, Nebraska, appeared on behalf of debtors and Jeffrey T. Sveen of Aberdeen, South Dakota, appeared on behalf of Educational Assistance Corporation. Paul Barnett of Aberdeen, South Dakota, also appeared on behalf of Educational Assistance Corporation.

### Facts

Debtors are individuals, husband and wife who filed an original petition under Chapter 13, Title 11 of the United States Code, on January 22, 1985. Debtor Jerry Akin is a graduate of the National College of Business in Rapid City, South Dakota. During his enrollment he obtained guaranteed student loans through the school and the objecting creditor is the owner or assignee of said loans.

The creditor qualifies under § 523(a)(8) as a governmental unit or a non-profit institution which made, insured or guaranteed the educational loan. The approximate amount of the debt on the date of the hearing, including interest, is $11,431.71.

Jerry Akin graduated in the spring of 1984 and obtained employment with N.C.R. as a systems analyst in June of 1984. His student loan then went into a grace period and he was not required to make any payments of interest or principal for approximately one year following graduation. He filed this Chapter 13 petition in January of 1985, prior to the date the first installment of principal or interest was due.

Debtors claim total assets of $3,650, all of which is exempt. Total debts are $22,-744 including priority debts to the Internal Revenue Service and to debtors' attorney in the total amount of $6,250. Of the remaining unsecured debts the student loan is listed at approximately $11,000.

The plan proposes to pay $125 each month for a period not to exceed five years. The debtors' total payments to the trustee under the plan shall not be less than $7,500. The plan proposes to pay priority claims first which means that approximately $1,250 will be paid to unsecured creditors over the life of the plan.

Since the date the plan was originally filed, Mr. Akin has received a 9% pay raise which increases his net take-home pay by approximately $30 per week. No change or modification to the plan has been proposed since the date of the pay increase.

Mr. Akin seemed surprised by the amount of the pay raise and expects pay raises in the future to be a smaller percentage of his total pay. However, he does expect pay raises in the future and is apparently doing well in the job.

Mr. Akin and Mrs. Akin have one child of their own and two children of Mrs. Akin from a prior marriage, all living with them. Mrs. Akin receives a total child support payment of $100 per month. Mr. Akin makes child support payments of $200 per month to support two children from a previous marriage.

Prior to going to college, Mr. Akin farmed. He sold out his farming operation several years ago and apparently incurred the Internal Revenue Service obligation as a result of a recapture of investment credit. The actual amount of the obligation is in dispute. One of the reasons that he approached an attorney concerning bankrupt-

cy was the insistence of certain unsecured creditors that he make payments on his obligations even though he was without immediate funds with which to do so. He has a Cooperative obligation from his previous farming operation as well as an unsecured debt to a bank in South Dakota, an unsecured obligation to his previous attorneys in South Dakota and some medical bills.

### Conclusions of Law

█ Under § 523(a)(8) of the Bankruptcy Code, a student loan such as the one incurred by Mr. Akin cannot be discharged. However, a student loan can be discharged under Chapter 13 if the Chapter 13 plan meets all of the necessary requirements of the Code and the cases, including the "good faith" requirement. See *In Re Smith,* 8 B.R. 543 (Bkrcy.D.Utah, 1981); *In Re Estus,* 695 F.2d 311 (8th Cir., 1982).

The creditor in this case claims that since the student loan is approximately 67% of the unsecured debt and 48% of the entire debt, the plan is not proposed in good faith. Basically this good faith argument is that with a plan payment of $125 per month and a maximum payment on unsecured debts of not more than 5% of the unsecured debt, once the priority claim of the Internal Revenue Service and the attorney fees are paid, there will be approximately nothing paid to this creditor. Therefore, says the creditor, a zero payment plan under these circumstances is not acceptable and is not proposed in good faith. In addition, the creditor claims that the student loan is a "long-term debt" and, therefore, is not dischargeable under § 1322(b)(5). Finally, the creditor claims that the plan must meet the best interest of the creditors' test by providing the creditors with at least the amount they would receive had the debtor filed a Chapter 7 bankruptcy.

█ In both *Smith* and *Estus* referred to above, the courts acknowledge that a Chapter 13 plan could enable a debtor to obtain a discharge of a student loan which would not be dischargeable in a Chapter 7 bankruptcy. The issue concerning good faith is not whether the Code prohibits the discharge of the student loan, but is whether under the circumstances of the particular debtor's financial condition, the main purpose of filing the Chapter 13 plan was to obtain the discharge of the student loan. The Estus court directed that the factors to be considered, in addition to the percentage of repayment to unsecured creditors are:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of the preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee. *In Re Estus,* 695 F.2d 311 at 317 (8th Cir. 1982).

█ Reviewing these factors requires the Court to combine the factors along with the changes in the Code since the case was decided. For example, the first factor to be considered is the amount of the proposed payments and the amount of the debtor's surplus. The recent amendments to the Bankruptcy Code require that all of the debtor's disposable income to be re-

ceived in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan. Section 1325(b)(1)(B). Based upon this factor alone, the plan cannot be confirmed. The plan does not propose to apply all disposable income during the pendency of the plan to the debts being paid under the plan. There is no statement in the plan that as the debtor's disposable income increases it will automatically be applied to the plan. Instead, the plan provides that no more than 5% of the unsecured debts shall be paid. For this reason, the plan does not comply with either the Code or the *Estus* case requirements.

Reviewing the other requirements of the *Estus* case, it appears that the debtor's employment history and ability to earn and likelihood of future increase in income is such that there will be increases in income which will be available for additional payments. The plan proposes to run for five years and most of the statements seem to be accurate, except for the income statement which does not list proposed increases in income. No classes of creditors receive preferential treatment and no secured claims are modified. One debt which is not dischargeable in Chapter 7 is proposed as dischargeable under the plan. There seem to be no inordinate medical expenses or other special circumstances and the debtors have not previously sought relief under the Bankruptcy Reform Act.

The motivation of the debtors appears to be to stop the harrassment that they were receiving from other unsecured creditors and is not solely to eliminate the student loan. Finally, the plan's administration would not place an onerous burden upon the trustee.

Although the above conclusion requires that the plan not be confirmed, because of its failure to provide for future payments from additional disposable income, the other objections raised by the creditor should be addressed at this time so that upon the filing of an amended plan, the matters are not again raised.

The creditor claims that this debt is not dischargeable because § 1328(c)(1) disallows a discharge of a debt that is provided for under § 1322(b)(5). That section concerns the treatment of long-term debt within a plan. It states that a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due".

■ The creditor claims that since the last payment·on the student loan would be payable after the final payment under the plan, it is "a long-term debt" under § 1322(b)(5) and is, therefore, not dischargeable pursuant to § 1328(c)(1). The creditor is clearly wrong. Section 1322(b)(5) is not mandatory and the Court will not require a strained reading of it to help the creditor obtain a result which is not contemplated by the Code. See *In Re Smith*, 8 B.R. 543 at 547 (Bkrcy.D.Utah, 1981).

■ The final argument of the creditor is that the plan does not propose to pay to the creditor an amount equal to the amount the creditor would obtain if the debtor were liquidated under Chapter 7. Section 1325(a)(4). The argument of the creditor is that if the debtor were liquidated under Chapter 7, then the student loan would not be dischargeable and the creditor would eventually be paid the amount of the loan. However, the creditor is once again attempting to prohibit the discharge of a student loan which is permitted under Chapter 13 by misconstruing the meaning of § 1325(a)(4). This argument has been presented to this Court before. Judge Crawford decided, in one of the early cases under the Bankruptcy Code, that since § 1325(a)(4) speaks specifically of "the amount that would be paid" if the estate were liquidated and the holder of a nondischargeable debt would be paid nothing, he rejected the theory that a Chapter 13 plan could not be confirmed because the creditor somehow received less when a debt which

was nondischargeable in Chapter 7 was actually discharged through a Chapter 13. See *Matter of Koerperich,* 5 B.R. 752 at 754 (Bkrtcy.Neb.1980). See also *In Re Yee* and *In Re Coye,* 7 B.R. 747 at 759 (Bkrtcy. E.D.N.Y.1980).

This plan cannot be confirmed because it fails to meet the requirement of § 1325(b)(1)(B). Separate order to follow.